IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT HARRELL | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-04-332 |
| | § | |
| | § | |
| MICHAEL ASTRUE, COMMISSIONER | § | |
| OF SOCIAL SECURITY ADMIN.[1] | § | |

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff Robert Harrell's action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of a final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et. seq*. Both parties have filed a Motion Summary Judgment. Having reviewed the parties' motions and the administrative record, and applicable law, the Court submits its Report and Recommendation to the District Court.

**I.**

**BACKGROUND**

Plaintiff Robert Harrell filed his application for DIB on June 21, 2001. Transcript ("Tr.") 116. Plaintiff claimed that his disability began on October 19, 1998, due to "ischemic heart disease

---

[1] The previous named Defendant in this action was Jo Anne B. Barnhart. Effective February 12, 2007, Michael J. Astrue became Commissioner and, under Rule 25(d)(1) of the Federal Rules of Civil Procedure, is automatically substituted as the defendant in this case.

1

s/p myocardial infarction with hypertension, chronic back pain, back surgery, and permanent nerve damage in right leg and foot." Tr. at 129.

Plaintiff's DIB claim was denied initially and also upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Norman on March 12, 2003, at which time the ALJ heard testimony from the Plaintiff and a vocational expert. Tr. at 296-313. Plaintiff was represented by counsel at the hearing. Tr. at 298. On April 17, 2003, ALJ Norman issued an unfavorable opinion, denying Plaintiff's request for benefits. Tr. at 10-19. In support of the determination, the ALJ made the following findings:

1.  The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the onset of disability.

3.  The claimant has impairments considered "severe" based on the requirement in the Regulations 20 CFR § 404.1520(b).[2]

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7.  The claimant has the following residual functional capacity: a restricted range of

---

[2] Although the ALJ does not specifically list in the "Findings" which impairments are considered "severe," in a section titled the "Evaluation of the Evidence" he states that the "medical evidence indicates that the claimant has impairments of hypertension, failed back syndrome, and ischemic heart disease" and that "[t]hese impairments are severe within the meaning of the Regulations[,] but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Tr. at 14-15.

>   light work limited by his need to alternately change from sitting to standing at will; inability to work at heights or climb; and inability to work around moving or dangerous machinery.
>
> 8.  The claimant is found capable of performing his past relevant work as a caregiver and recruiter (20 CFR § 404.1565).
>
> 9.  The claimant is a "younger individual between the ages of 45 and 49" (20 CFR § 404.1563). [sic] and he has a high school education. (20 CFR § 404.1564).
>
> 10. The claimant has transferrable skills from semi-skilled work previously performed as described in the body of the decision. (20 CFR § 404.1568).
>
> 11. The claimant has the residual functional capacity to perform a significant range of light work. (20 CFR § 416.967).
>
> 12.[3] Although the claimant's exertional limitations do not allow him to perform the full range of light work, using the Medical-Vocational Rule 202.22 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of jobs include work as a mail handler, license clerk, and shipping order clerk. The vocational expert testified that there are approximately ten to twenty thousand such jobs that exist in the local economy and that there are hundreds of thousands of such jobs that exist in the national economy.
>
> 14. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

Tr. at 18-19.[4]

---

[3] This was erroneously numbered 13.

[4] The Court observes that the administrative record reflects that Plaintiff had filed an earlier application for DIB benefits on November 20, 1998. An administrative hearing was held on February 16, 2000, but it was before ALJ Chamberlain. Tr. at 20-71. Comparing the findings of ALJ Norman, which are set forth above, with the earlier findings of ALJ Chamberlain, the Court notes they are not completely consistent. For example, on April 25, 2000, ALJ Chamberlain determined that the Plaintiff did not have the residual functional capacity to perform his past relevant work as a recruiter, rod man (land surveyor), or laborer and, given the exertional limitations, which ALJ Chamberlain more broadly found, Plaintiff, while not disabled, was limited to sedentary work. Tr. at 293-95. The Court further observes that following ALJ Chamberlain's determination the Veterans Administration make a favorable disability determination that Plaintiff's "ischemic heart disease s/p myocardial infarction with hypertention [was] 100% disabling, effective August 31, 1994, and an evaluation of 60%, effective March 1, 1995, and awarded a "full grant of benefits."

Plaintiff requested review of the ALJ's decision by the Appeals Counsel.  Tr. at 6-9.  On April 12, 2004, the Appeals Council denied Plaintiff's request for review.  Tr. at 3-5.  The decision of the ALJ thereby became the final decision of the Commissioner, and it is from this final decision that the appeal has been taken pursuant to 42 U.S.C. § 405(g).

In this action, Plaintiff alleges that the ALJ did not apply proper legal standards to evaluate the evidence and that substantial evidence does not support his determination.  In particular, Plaintiff claims that ALJ Norman failed to consider the Veterans Administration's ("VA") disability findings and, because he failed to properly develop the record, the ALJ erred in determining Plaintiff's residual functional capacity.  Pl's Mot. Sum. J. at 4-12.  The Commissioner responds that substantial evidence supports the ALJ's decision, that it comports with applicable law, and that it should therefore be affirmed.  D's Mot. Sum. J. at 4-10.

## II.

## DISCUSSION

### A.  Standard For Review of Agency Decision

A federal court reviews the Commissioner's denial of benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  "Substantial evidence" is defined as being more than a scintilla and less than a preponderance and of such relevance that a reasonable mind would accept it as adequate to support a conclusion.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  If the Commissioner's findings are adjudged to be supported by substantial evidence, then such findings are conclusive and must be affirmed.  *Id*.  A

---

Tr. at 273-277.

finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. *Id.* Conflicts in the evidence are for the Commissioner, not the Court, to resolve. *Brown*, 192 F.3d at 496.

### B. <u>Burden of Proof</u>

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) *quoting Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986). The Commissioner applies a five-step inquiry to determine whether the claimant is capable of performing "substantial gainful activity," or is, in fact, disabled. The five-step process are delineated as follows:

> 1. An individual who is working and engaged in substantial gainful activity will not be found to be disabled regardless of the medical findings;
>
> 2. An individual who does not have a "severe impairment" will not be found to be disabled;
>
> 3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

>   4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
>
>   5. If an individual's impairment precludes performance of his past work, then other factors, including age, education, past work experience, and residential functional capacity must be considered to determine if any work can be performed.

20 C.F.R.§ 416.920(b)-(f); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

If the Commissioner decides at any step along the way that an individual is not disabled, the evaluation process comes to a halt at that particular step and proceeding further becomes unnecessary. *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984). If, however, the claimant shows that he is disabled under the first four steps, the burden then shifts to the Commissioner at the fifth step to demonstrate that the claimant can perform other substantial work in the national economy. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). Finally, only if the final step in the process is reached does the fact-finder consider the claimant's age, education, and work experience in light of his or her residual functional capacity. *See Rivers v. Schweiker*, 684 F.2d 1144, 1152-1153 (5th Cir. 1982).

### C. VA Disability Determination Issue

The Fifth Circuit has repeatedly recognized that "[a] VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citing *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981); *Skeels v. Richardson*, 453 F.2d 882, 883 (5th Cir. 1972). The Court in *Chambliss* observed that "the relative weight to be given this type of

evidence will vary depending upon the factual circumstances of each case," but observed that "in most cases" it had referred to a VA disability determination as being entitled to "great weight." *Chambliss v. Massanari*, 269 F.3d at 522.

Nevertheless, the Court has recognized that the ALJ need not give "great weight" to a VA disability determination as long as the ALJ adequately explains the valid reasons for not doing so, as the regulations for the disability status differ between the SSA and the VA. *See id*. at 522; *see also Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990) (recognizing that "[t]he process by which the Secretary renders a disability determination is *sui generis*."). In other words, the ALJ may ultimately disagree with findings of the VA as long as it is evident that the findings and the underlying evidence are considered. *See Chambliss*, 269 F.3d at 522; *see also Kinash v. Callahan*, 129 F.3d 736, 739 (5th Cir. 1997).

In the present case, the Department of Veteran Affairs determined that Plaintiff's "ischemic heart disease s/p myocardial infarction with hypertention [was] 100% disabling, effective August 31, 1994, and an evaluation of 60%, effective March 1, 1995, and awarded a "full grant of benefits." Tr. at 273-277. Nowhere in ALJ Norman's decision is the VA disability determination even mentioned. Tr. at 13-19. The Commissioner contends that because the VA disability determination is in the administrative record and that the ALJ stated that he considered the entire record when making his determination, this supports the conclusion that the ALJ properly considered the matter. Def's Mot. Sum. J. at 8-9. The Court cannot agree. The ALJ's decision, as adopted by the Appeals Council, "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The ALJ's complete failure to even recognize or acknowledge the existence of the VA disability determination, leads this Court

to conclude that the ALJ completely and totally disregarded this evidence and, as a result, committed reversible error. This matter must, therefore, be remanded for further consideration of this matter.

The Court **RECOMMENDS** that Defendant's Motion be **DENIED** and that Plaintiff's Motion be **GRANTED** on this issue.

### D. Residual Functioning Capacity

Plaintiff also challenges the ALJ's determination on the basis that the ALJ failed to develop the record and that substantial evidence does not support the ALJ's residual functional capacity determination.

The Social Security regulations define residual functional capacity ("RFC") as the maximum degree to which the individual retains the capacity for sustained performance of the physical and mental requirements of jobs. 20 C.F.R. § 404, Subpt. P, App. 2 § 200.00(c). An ALJ has the responsibility for determining a claimant's RFC. *Ripley*, 67 F.3d at 557. The ALJ's determination is reached through a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988).

When reviewing the assessment of a claimant's RFC, the Fifth Circuit has determined that, while not controlling, the Social Security Administration Rulings ("SSR") can be looked to for guidance. *See Myers*, 238 F.3d at 620. In particular, SSR 96-8p provides that an RFC is a function-by-function assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A regular and continuing basis means 8 hours a day, for 5 days a week. Assessing physical or exertional capacity requires separate consideration of seven strength demands that include: sitting, standing, walking, lifting, carrying,

pushing, and pulling.  *Bornette v. Barnhart*, 466 F.Supp.2d 811, 815 (S.D. Tex. 2006).  Any inconsistencies in the evidence must be resolved by the ALJ in the RFC assessment.  *Woods v. Barnhart*, 458 F.Supp.2d 336, 351 (S.D. Tex. 2006).

Here, there is a medical source opinion from a <u>*non-examining*</u> medical consultant for the Agency who merely completed a standardized checklist form concerning Plaintiff's functional capacity on November 16, 2001 (Tr. at 232-239), however, it is not consistent with the prior determination of Plaintiff's RFC (Tr. at 291-294), nor is the assessment wholly consistent with the diagnosis and assessment of the consultative examiner, Dr. Gipson.  For example, on October 19, 2001, Dr. Gipson examined Plaintiff and, while not assessing the extent or degree or his exertional or non-exertional limitations, noted that Plaintiff was 66.5 inches (5' 5") in height and he weighed 218 pounds.[5]  Dr. Gipson's assessment of Plaintiff's heart condition was noted to be "semi stable heart disease" and he recommended in his evaluation that Plaintiff "should have a follow up stress test to determine his level of exercise capabilities."  Tr. at 230.  Dr. Gipson further diagnosed Plaintiff with mild chronic obstruction pulmonary disease ("COPD") and noted that he experiences a "shortness of breath during exertional activities such as walking a block or less."  Tr. at 230.  Dr. Gipson noted that Plaintiff's "squat was poor" (Tr. at 229) and that, due to his back pain, he "will not be able to perform bending, lifting, or heavy loading."  Tr. at 230.  Even though Dr. Gipson noted that Plaintiff "was able to walk in the normal office setting with a slight limp on the left," he did not provide any opinions as to the extent or duration of Plaintiff's exertional limitations.

---

[5] The other medical records also document Plaintiff's height and weight and further diagnose him as morbidly obese.  Tr. at 172-173; 184; 188; and 193.  Plaintiff also testified that he is "way overweight now."  Tr. at 302.  Accordingly, upon remand, the Court recommends that the effect of Plaintiff's obesity, particularly in light of his heart and back problems and the COPD, should be considered by the Commissioner.

The Court recognizes that an ALJ may make a determination of a claimant's RFC without a medical source statement that describes the existing exertional and/or non-exertional limitations and that the absence of such a statement does not, in itself, make the record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995); *see also West v. Sullivan*, 751 F.Supp. 647 (N.D. Tex. 1990). However, the ALJ's determination of the maximum degree to which the claimant retains the capacity for sustained performance of the physical and mental requirements of jobs must be supported by substantial evidence in the existing record. *See Ripley*, 67 F.3d at 557.

Reviewing this record, the Court finds that the only other evidence regarding Plaintiff's ability to work came from Plaintiff himself, yet nothing in his responses to the "Daily Activities Questionnaire" (Tr. at 142-143) or his testimony at the administrative hearing regarding his activities (Tr. at 298-312) substantially supports the ALJ's determination of Plaintiff's RFC. *See Loza*, 219 F.3d at 395 (an ALJ is entitled to resolve conflicts in the medical evidence and make decisions regarding credibility, but he is not entitled to make medical judgments); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (ALJ's are lawyers without medical expertise and, although schooled about the regulations, they are not empowered to rely on their "lay intuitions about medical phenomena" to overrule a physician). The Court concludes that the ALJ failed to develop the record and that his determination of Plaintiff's RFC is not substantially supported by the record.

The Court **RECOMMENDS** that Defendant's Motion be **DENIED** and that Plaintiff's Motion be **GRANTED** on this issue.

## Conclusion

For all the reasons stated above, the Court therefore **RECOMMENDS** that the Plaintiff's Motion for Summary Judgment (Instrument No. 12) be **GRANTED** and that Defendant's Motion

for Summary Judgment (Instrument No. 14 & 15) be **DENIED**. The Court further **RECOMMENDS** that the ALJ's decision be **REVERSED** and **REMANDED** to the Social Security Administration for further consideration consistent with this opinion.

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties. The Parties **SHALL** have until **July 13, 2007**, to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections **SHALL** be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553. **Any Objections filed SHALL be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration. Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this        26th        day of June, 2007.

_____
John R. Froeschner
United States Magistrate Judge